IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **JOHNNY HUGHLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 3:24-CV-569-ECM-KFP |
| | ) |
| **EAST ALABAMA MEDICAL** | ) |
| **CENTER, et al.,** | ) |
| | ) |
| Defendants. | ) |

## <u>OBJECTIONS OF EAST ALABAMA MEDICAL CENTER AND DAVID HOLMES, M.D. TO RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Pursuant to 28 U.S.C. § 636(b)(1), East Alabama Medical Center ("EAMC") and David Holmes, M.D. ("Dr. Holmes") (collectively, "these Defendants") respectfully make the following objections to the Recommendation of the Magistrate Judge (Doc. 39) entered in this matter on June 6, 2025. For the reasons stated below, two sections of the Recommendation should not be followed. Specifically, the Plaintiff's stabilization claim against EAMC pursuant to the Emergency Medical Treatment and Labor Act (EMTALA) should be dismissed, and supplemental jurisdiction over the Plaintiff's state law claims against EAMC and Dr. Holmes should not be exercised.

Plaintiff Johnny Hughley sued EAMC, Dr. Holmes, Dr. Stephen Lock, and Dr. Clay Harper alleging federal causes of action pursuant to EMTALA and state law medical malpractice claims pursuant to the Alabama Medical Liability Act (AMLA) (Doc. 13 ¶¶ 1, 6). EAMC and Dr. Holmes filed a motion to dismiss Hughley's claims against them (Doc. 18). Hughley responded to EAMC and Dr. Holmes' motion to dismiss (Doc. 33), and these Defendants filed a reply brief (Doc. 37). The Magistrate Judge recommends granting these Defendants' motion in part but denying the motion to dismiss Hughley's EMTALA stabilization claim. The Magistrate Judge also recommends that this Court exercise its discretion to use supplemental jurisdiction to hear Hughley's state law claims occurring after September 5, 2022, against both EAMC and Dr. Holmes (Doc. 39).

These Defendants' objections to the Recommendation relate solely to Section III(B)(3) recommending denial of the motion to dismiss Hughley's EMTALA stabilization claim as to EAMC, and Section III(C)(1) recommending that this Court exercise discretion to retain supplemental jurisdiction over Hughley's timely state law medical malpractice claims against EAMC and Dr. Holmes. This Court should decline to follow the Recommendation as to those sections.

First, the Recommendation errs by failing to recommend dismissal of Hughley's EMTALA stabilization claim because he was admitted to the hospital

floor where he received inpatient treatment.[1] *See Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d. 1115, 1130 (S.D. Ala. 2005), aff'd, 225 F. App'x 828 (11th Cir. 2007); *Baker v. Health Care Auth. of Huntsville*, No. 5:19-cv-00117-AKK, 2019 U.S Dist. LEXIS 113422 *8, 2019 WL 2995505 (N.D. Ala. July 9, 2019) (quoting *Morgan*). Second, because Hughley's EMTALA stabilization claim is due to be dismissed, and because all of Hughley's other federal claims are due to be dismissed, this Court should not retain supplemental jurisdiction over Hughley's state law claims. *See, e.g., Walker v. Williams*, 2022 U.S. App. LEXIS 3477 (11th Cir. Feb. 8, 2022); *Woods v. Comm'r*, 951 F.3d 1288, 1295 (11th Cir. 2020); *Harry v. Marchant*, 291 F.3d 767, 775 (11th Cir. 2002); *Mizell v. City of Ozark*, 2024 U.S. Dist. LEXIS 42060, *4 (M.D. Ala. Mar. 11, 2024).

## LEGAL STANDARD

This Court's review is *de novo*. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

---

[1] These Defendants note that the Recommendation correctly observes that these Defendants stressed the lack of a transfer to another hospital or facility in their stabilization argument (Doc. 39 pp. 13-14). However, these Defendants' motion to dismiss also explained that Hughley was admitted for inpatient treatment (Doc. 18, ¶ 12-18). In retrospect, these Defendants could have made that distinction and undisputed fact clearer to the Magistrate Judge, and set out in more detail the law discussed herein clearly holding that there can be no valid EMTALA stabilization claim where a patient is admitted from an emergency department to the hospital floor for inpatient care and treatment.

## OBJECTIONS

### I.   HUGHLEY'S EMTALA STABILIZATION CLAIM IS DUE TO BE DISMISSED.

The Recommendation errs by concluding that EAMC is not entitled to the dismissal of Hughley's stabilization claim. That conclusion is contrary to the applicable law set forth herein.

EMTALA was enacted to prevent hospitals from "turning away or transferring indigent patients without evaluation or treatment." *Harry v. Marchant*, 291 F.3d 767, 768 (11th Cir. 2002) (en banc). The Act was passed to prevent "'patient dumping,' the publicized practice of some hospitals turning away or transferring indigent patients without evaluation or treatment." *Id.* "Under EMTALA, hospital **_emergency rooms_** are subject to two principal obligations, commonly referred to as the appropriate medical screening requirement and the stabilization requirement. *See* 42 U.S.C. § 1395dd (1994)." *Harry*, 291 F.3d at 770 (emphasis added).

"Under EMTALA, the term 'to stabilize' means 'with respect to an emergency medical condition . . ., [a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur during the transfer of the individual from a facility.'" *Harry*, 291 F.3d at 770-71 (quoting 42 U.S.C. § 1395dd(e)(3)(A)) (alterations in original); *see also Baker v. Health Care Auth. of Huntsville*, No. 5:19-cv-00117-AKK, 2019 U.S Dist. LEXIS 113422 \*8,

2019 WL 2995505 (N.D. Ala. July 9, 2019) (quoting *Harry* and dismissing a plaintiff's EMTALA stabilization claim under similar facts).

Here, Hughley was not transferred to another hospital or facility, and was not released or discharged from the EAMC emergency department. Rather, he was admitted to the floor where he received inpatient treatment from December 21, 2023 to December 23, 2023. Therefore, his stabilization claim is due to be dismissed as set forth in EAMC's Motion to Dismiss.

The Recommendation states that Eleventh Circuit precedent allows for an EMTALA stabilization claim where there is a "release or transfer." (Doc. 39 at p. 14). In support of this statement, the Recommendation cites *Smith v. Crisp Reg'l Hosp.*, 985 F.3d 1306, 1308 (11th Cir. 2021). However, <u>*Smith* did not involve a situation where the patient was admitted to the hospital floor for inpatient treatment and then later released or transferred</u>, or even address that question. Instead, it involved a claim alleging that the defendant hospital "unreasonably delayed" a transfer from the defendant hospital's emergency room. *Id* at 1307, 1309. ("We thus conclude that Appellant's claim that the Hospital unreasonably delayed the transfer of MS to the Children's Hospital in Macon does not state a claim of violation of [EMTALA].")

The Recommendation also cites *Cooper v. Gulf Breeze Hosp.*, 839 F. Supp. 1538, 1544 (N.D. Fla. 1993) to support its recommendation to not dismiss Hughley's

stabilization claim. The *Cooper* court held that the plaintiff stated a stabilization claim where the defendant hospital failed to stabilize the plaintiff's condition before releasing him. However, in that case, the opinion from the Northern District of Florida does not state whether the patient was admitted to the floor for inpatient care. Additionally, *Cooper* was decided nine years before the Eleventh Circuit's decision in *Harry*, and many years before the pertinent decisions discussed below from the Southern and Northern District Courts of Alabama.

While the facts and holdings of *Smith* and *Cooper* are distinguishable, it is not necessary for this Court to delve into those distinctions. That is because the district courts of Alabama consistently hold that "**the EMTALA obligation to stabilize a patient *ceases at the time of the patient's admission as an inpatient*, unless the hospital fails to admit the patient in good faith or does so as a subterfuge to avert EMTALA liability**." *Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d. at 1130 (emph. added); *Baker*, 2019 U.S Dist. LEXIS 113422 at *8 (quoting *Morgan*).

EAMC and Dr. Holmes cited *Baker* in their Motion to Dismiss (Doc. 18 ¶ 20). *Baker* and *Morgan*, two cases decided by this Court's sister Alabama District Courts make clear that where the patient is admitted to the hospital floor for inpatient treatment, there can be no EMTALA stabilization claim unless the plaintiff has alleged the admission was in bad faith or a subterfuge to avoid EMTALA liability. Hughley fails to allege that EAMC's admission was in bad faith or a subterfuge.

- 6 -

In *Baker*, the Northern District of Alabama granted the defendant hospital's motion to dismiss the plaintiff's EMTALA stabilization claim because the plaintiff was admitted to the hospital and failed to allege that the hospital admitted her in bad faith. Thus, the *Baker* plaintiff failed to allege a plausible EMTALA stabilization claim. The *Baker* Court specifically held that because the plaintiff was "'an admitted inpatient care patient,'" and "'[b]ecause [she] was not transferred, [her] § 1395dd(b) stabilization requirement claim fails to state a valid cause of action.'" *Baker*, 2019 U.S Dist. LEXIS 113422 at *8 (quoting *Harry*, 291 F.3d at 775. Judge Kallon's full analysis of this holding is as follows:

> "Under EMTALA, the term 'to stabilize' means 'with respect to an emergency medical condition . . ., [a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur *during the transfer of the individual from a facility*.'" *Harry*, 291 F.3d at 770-71 (quoting 42 U.S.C. § 1395dd(e)(3)(A)) (alterations in original, emphasis added). Stated differently, EMTALA's "stabilization requirement only sets forth standards for transferring a patient in either a stabilized or unstabilized condition," *id.* at 771, and, hospitals have "no duty under EMTALA to provide stabilization treatment to a patient with an emergency medical condition who is not transferred," *id.* at 775. Thus, "**the EMTALA obligation to stabilize a patient ceases at the time of the patient's admission as an inpatient**, *unless* the hospital fails to admit the patient in good faith or does so as a subterfuge to avert EMTALA liability." *Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1130 (S.D. Ala. 2005) (emphasis in original), *aff'd*, 225 F. App'x 828 (11th Cir. 2007).
>
> Here, Ms. Baker admits that Huntsville Hospital admitted her to its neurological intensive care unit after diagnosing her stroke. *See* docs. 12 at 18-29, 36; 12-1 at 9. As such, **it is irrelevant to the analysis that,**

- 7 -

> **as Ms. Baker maintains, she "was never stabilized even after her admission to [the] Hospital."** Doc. 12 at 36. **As an admitted inpatient care patient, and "[b]ecause [Ms. Baker] was not transferred, [Ms. Baker's] § 1395dd(b) stabilization requirement claim fails to state a valid cause of action."** *Harry*, 291 F.3d at 775. Therefore, to survive the motion to dismiss, Ms. Baker must plead facts showing that the Hospital admitted her as a subterfuge to avoid EMTALA liability. *See Morgan*, 403 F. Supp. 2d at 1130. In that regard, Ms. Baker alleges that she "believes her admission [to Huntsville Hospital] was in 'bad faith,' and an attempt to subterfuge violations of the EMTALA." Doc. 12 at 36. Ms. Baker, however, fails to allege any facts to support this contention. For example, there are no allegations suggesting that Huntsville Hospital had no intention of providing her with stabilizing care or that it admitted her only to avoid EMTALA liability. *See* doc. 12. Ms. Baker likely cannot make such an assertion given that the Second Amended Complaint indicates that Baker remained at the Hospital for more than a week following her admission to the NICU. *See id.* at 28. As a result, because Ms. Baker does not allege facts to support her conclusory allegation that the Hospital admitted her in bad faith, she has not alleged a plausible claim for alleged violations of EMTALA's stabilization requirement.

*Baker*, 2019 U.S. Dist. LEXIS at 7-9 (bold and underlined emph. added, other emph. in orig.). Just so here. Hughley was admitted to the hospital floor for inpatient treatment, and he does not allege that the admission was in bad faith or a "subterfuge."

Likewise, the Southern District of Alabama reached the same holding in *Morgan* in a case where the plaintiff patient was admitted then later discharged after her inpatient hospitalization. 403 F. Supp. 2d 1115, 1117 (S.D. Ala. 2005). There, Judge Steele analyzed various decisions from other jurisdictions on the question of whether a patient who is admitted for inpatient treatment, and then later discharged,

- 8 -

is "transferred" for purposes of EMTALA. Judge Steele so held: "the EMTALA obligation to stabilize a patient **_ceases at the time of the patient's admission as an inpatient_**, unless the hospital fails to admit the patient in good faith or does so as a subterfuge to avert EMTALA liability." *Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d. at 1130 (emphasis added).

The Eleventh Circuit's decision in *Harry v Marchant*, while dealing with facts where a patient died during a hospitalization rather than a discharge, is consistent with the *Baker* and *Morgan* holdings. In *Harry*, the court noted that the "sole issue before this Court is the extent to which EMTALA requires a hospital to provide stabilization treatment to a patient with an emergency medical condition who is not transferred." 291 F.3d at 770. The court instructed that by "[r]eading the statute in its specifically defined context, it is evident that EMTALA mandates stabilization of an individual only in the event of a 'transfer' as defined in EMTALA." *Id* at 771. The court pointed out that "[b]y its own terms, the statute does not set forth guidelines for the care and treatment of patients who are not transferred." *Id*. On the question of whether the admitted patient in *Harry* was "transferred", the court held: "In this case, [the patient] was screened, treated, and eventually admitted. Consequently, Aventura Hospital did not 'transfer' her as defined by EMTALA." *Id*. at 770, n.8. *See also Bryant v. Adventist Health System/West*, 289 F. 3d 1162, 1168 (9th Cir. 2002) ("We hold that EMTALA's stabilization requirement ends

when an individual is admitted for inpatient care."); *Bryan v. Rectors and Visitors of Univ. of Va.*, 95 F. 3d 349, 350 (4th Cir. 1996) ("[The plaintiff's] essential contention is that EMTALA imposed upon the hospital an obligation not only to admit [the patient] for treatment of her emergency condition, which concededly was done, but thereafter continuously to 'stabilize' her condition, no matter how long treatment was required to maintain that condition. Such a theory requires a reading of the critical stabilization requirement in subsection (b)(1) of EMTALA that we cannot accept.")

Here, Hughley was admitted for and received inpatient care, and he does not allege that his admission was in bad faith or a subterfuge to avoid EMTALA liability. As stated in EAMC's Motion to Dismiss, Hughley alleges that he was admitted to EAMC (Doc. 18 ¶ ¶ 12-18; *see also* Doc. 37 ¶ 4). While Mr. Hughley's complaint does not use the terms "admitted" or "inpatient", and while he erroneously states his admission was from December 23-25, 2023 when it was actually December, 21-23, 2023, the undisputed fact that he was admitted to the hospital floor for inpatient care and treatment is demonstrated in Hughley's Second Amended Complaint and the exhibits he attached to his filings. Therefore, even if this Court elects not to review the actual certified copy of the 322 pages of medical records supplied by these Defendants (Doc. 18-1) for completeness, the filings by Hughley standing alone demonstrate he was admitted for inpatient treatment.

Hughley's Second Amended Complaint states that he presented to EAMC in December 2023 and was discharged two days later.[2] The sole exhibit to Hughley's Second Amended Complaint related to the December 2023 admission refers to the "Arrival Time" as "12/21/2023 10:58:06 AM" (Doc. 13-7 p. 2). This correlates to the certified medical records of the December 21-23 admission produced by these Defendants (Doc. 18-1). The Magistrate's Recommendation acknowledges that Mr. Hughley was admitted to the hospital (Doc. 39 at p. 13) ("[EAMC] acknowledges that Hughley was indeed admitted to the emergency department, 'screening tests [were] performed on Mr. Hughley during his visit,' and 'that a 'Certified Emergency was declared' **before Hugley was admitted to the hospital**." (emphasis added). It is undisputed that Hughley was admitted for inpatient care and treatment.

In the event there is any question about this undisputed fact, these Defendants respectfully encourage the Court to consider the certified records of the December 21-23 admission (Doc. 18-1) for this sole purpose. *See, e.g., Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).[3] The certified copies of the

---

[2] That Mr. Hughley mistakes the admission as occurring from December 23-25, 2023 when it was actually December 21-23, 2023 (Doc. 18-1) is immaterial.

[3] "Ordinarily we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."

December 21-23 admission can be considered for the purpose of confirming (if there is any need to so confirm) that Hughley was admitted from the emergency department to the hospital floor for inpatient treatment, since Hughley refers to the records in his complaint, attaches some of them, the fact that he was admitted to the floor is central to defeating his stabilization claim, and the fact that he was admitted is not in dispute.

The allegations by Hughley are aligned with the facts presented in both *Baker* and *Morgan* to the Northern and Southern District Courts. In both of those cases, the patient was admitted to a hospital floor or unit for inpatient treatment after presenting to the emergency department, then later discharged, just as with Hughley at EAMC. *Baker*, 2019 U.S. Dist. LEXIS 113422 at *8; *Morgan*, 403 F. Supp. 2d 1115 at 1117. As explained above, in both of those decisions, the district courts determined there can be no viable stabilization claim because the stabilization requirement ends when the patient is admitted for inpatient treatment. *Supra*. Accordingly, as the district courts for the Northern District of Alabama and the Southern District of Alabama have held, this Court should hold that because Mr. Hughley was "an admitted inpatient care patient, and '[b]ecause [Mr. Hughley] was not transferred, [Mr. Hughley's] § 1395dd(b) stabilization requirement claim fails to state a valid cause of action.'" *Baker*, 2019 U.S. Dist. LEXIS, at *8-9, quoting *Harry*, 291 F.3d at 775.

This Court should decline to follow the Recommendation as to the EMTALA stabilization claim against EAMC because Hughley was not transferred from the emergency department, rather, he was admitted to the hospital floor for an inpatient hospitalization. *See Morgan*, 403 F. Supp. 2d. at 1130; *Baker*, 2019 U.S Dist. LEXIS 113422 at *8. Therefore, Hughley's stabilization claim is due to be dismissed.

## II.   SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED.

Having clarified in this objection that Hughley was admitted for inpatient treatment, the EMTALA claims are due to be dismissed. As such, this Court can and should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction" where "the district court has dismissed all claims over which it has original jurisdiction." The Eleventh Circuit has repeatedly encouraged district courts to decline to exercise supplemental jurisdiction in this situation and dismiss remaining state law claims where there are no pending federal claims. *See, e.g. Woods v. Comm'r*, 951 F.3d 1288, 1295 (11th Cir. 2020) ("When, as here, a district court dismisses a plaintiff's federal claims, we have encouraged dismissal of the remaining state-law claims too.") citing *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Walker v. Williams*, 2022 U.S. App. LEXIS 3477 (11th Cir. Feb. 8, 2022) (holding that after dismissal of §1983 claims, district court "had discretion to dismiss Plaintiff's state claims, and it followed this Court's

guidance in choosing to do so"); *Mizell v. City of Ozark*, 2024 U.S. Dist. LEXIS 42060, *4 (M.D. Ala. Mar. 11, 2024) (Judge Marks agreeing with Magistrate Judge's recommendation in dismissing federal claims as time-barred and noting rule that "[w]hen a court declines to exercise supplemental jurisdiction over state law claims in a case originally filed in federal court, the state law claims "should be dismissed without prejudice so that the claims may be refiled in the appropriate state court.") *quoting Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999). For these reasons, this Court should follow the encouragement of the Eleventh Circuit and this District's precedent, decline to exercise supplemental jurisdiction over Plaintiff's state law malpractice claims, and dismiss those claims without prejudice. *See, e.g., Harry v. Marchant*, 291 F.3d 767, 775 (11th Cir. 2002) ("because [plaintiff] was admitted as a patient, redress for negligence occurring during her emergency room care is available through state medical malpractice laws, rather than federal law.") (Barkett, concurring).

WHEREFORE, premises considered, Defendants EAMC and Dr. Holmes respectfully object to the Recommendations as outlined herein, and request that all claims against them be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted this the  20th  day of June, 2025.

          /s Joshua J. Jackson
Joshua J. Jackson (ASB-8286-U79J)
Attorney for Defendants East Alabama
Medical Center and David Holmes, M.D.

**SAMFORD & DENSON, LLP**
P.O. Box 2345
Opelika, AL  36803-2345
Telephone (334) 745-3504
Facsimile (334) 745-3506
Email: jackson@samfordlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the  20th  day of June, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following, and/or mailed the foregoing via United States mail as noted below:

Johnny Hughley, pro se (via U.S. Mail)
1412 South Long Street, Lot #6
Opelika, AL 36801

George Newton
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209

          /s Joshua J. Jackson
          OF COUNSEL